IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

| | | |
|---|---|---|
| JANETT SMITH, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 5:04-0639** |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| **Defendant.** | ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security

denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social

Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  By Standing Order, this case was referred to the

undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit

Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. §

636(b)(1)(B).  Presently pending before the Court are the parties' Cross-Motions for Judgment on

the Pleadings and Plaintiff's Reply Brief.

The Plaintiff, Janett Smith (hereinafter referred to as "Claimant"), filed an application for DIB

on November 23, 2001, alleging disability as of June 19, 2000, due to stress, memory loss,

fibromyalgia, pain in the muscles and joints, and poor concentration.  (Tr. at 84-86, 40, 46.)  The

claims were denied initially and upon reconsideration. (Tr. at 40-43, 46-48.) On November 24, 2002,

Claimant requested a hearing before an Administrative Law Judge (ALJ).  (Tr. at 51.)  The hearing

was held on June 11, 2003 before the Honorable Thomas R. King.  (Tr. at 352-86.)  By decision dated

August 13, 2003, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 12-26.)  The

ALJ's decision became the final decision of the Commissioner on May 28, 2004, when the Appeals

Council denied Claimant's request for review. (Tr. at 6-8.) On June 23 2004, Claimant brought the

present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has

the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any

medically determinable impairment which can be expected to last for a continuous period of not less

than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of

disability claims. 20 C.F.R. § 404.1520 (2004). If an individual is found "not disabled" at any step,

further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether

a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant

is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c).

If a severe impairment is present, the third inquiry is whether such impairment meets or equals any

of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id.

§ 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the

fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.

20 C.F.R. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of

disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the

Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and

final inquiry: whether the claimant is able to perform other forms of substantial gainful activity,

considering claimant's remaining physical and mental capacities and claimant's age, education and

prior work experience. 20 C.F.R. § 404.1520(f) (2004). The Commissioner must show two things:

(1) that the claimant, considering claimant's age, education, work experience, skills and physical

shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 16.) Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of fibromyalgia, residual effects of bilateral carpal tunnel syndrome, major depressive disorder and panic disorder. (Tr. at 16.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 20.) The ALJ then found that Claimant had the residual functional capacity to perform low stress work at the light exertional level that requires no fine manipulation and no direct contact with the public. (Tr. at 22.) The ALJ thus determined that Claimant could not perform her past relevant work. (Tr. at 23.) Nevertheless, the ALJ found that Claimant could perform jobs such as housekeeper/cleaner for hotels/motels, which existed in significant numbers in the national and regional economies. (Tr. at 24.) On this basis, benefits were denied. (Tr. at 24-26.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving

3

conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals that the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on January 9, 1951, and was 52 years old at the time of the administrative hearing. (Tr. at 84, 356.) Claimant has a high school education. (Tr. at 105.) In the past, she worked as a supervisor/coordinator/outreach worker for the Greenbrier Committee on Aging, a store clerk, mental health residential aide, and in-home aide. (Tr. at 100, 15.)

The Medical Record

The Court has reviewed all evidence of record, including the medical evidence, and will discuss it below as it relates to Claimant's arguments. However, because Claimant's arguments concern only her mental impairments, the Court does not discuss the physical medical evidence.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in determining Claimant's residual functional capacity ("RFC") and in relying upon the Vocational Expert's ("VE") testimony in response to an improper hypothetical question posed at the administrative hearing. The Commissioner asserts that these arguments are without merit and that the decision is supported by substantial evidence.

Analysis

Claimant argues that the ALJ failed to include in his finding regarding her RFC any limitation

in concentration resulting from her severe impairments of depression and anxiety disorder.

Additionally, she argues that the ALJ failed to submit a proper hypothetical question to the VE at the

administrative hearing which including Claimant's limitations in concentration.  The Commissioner

asserts that these arguments are without merit.

At steps four and five of the sequential analysis, the ALJ must determine the claimant's

residual functional capacity (RFC) for substantial gainful activity.  "RFC represents the most that an

individual can do despite his or her limitations or restrictions."  See Social Security Ruling 96-8p,

61 Fed. Reg. 34474, 34476 (1996).  Looking at all the relevant evidence, the ALJ must consider the

claimant's ability to meet the physical, mental, sensory and other demands of any job.  20 C.F.R. §

404.1545(a)(4) (2004).  "This assessment of your remaining capacity for work is not a decision on

whether you are disabled, but is used as the basis for determining the particular types of work you

may be able to do despite your impairment(s)."  Id.  "In determining the claimant's residual functional

capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental

activity that the claimant can perform in a work setting, after giving appropriate consideration to all

of her impairments."  Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner.   See 20 C.F.R. §

404.1527(e)(2) (2004).

> In determining what a claimant can do despite his limitations, the SSA must consider
> the entire record, including all relevant medical and nonmedical evidence, such as a
> claimant's own statement of what he or she is able or unable to do.  That is, the SSA
> need not accept only physicians' opinions.  In fact, if conflicting medical evidence is
> present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

As previously noted, the ALJ determined that Claimant retained the RFC for low-stress work

at the light exertional level which would require no fine manipulation and no direct contact with the

pubic. (Tr. at 22.)   In determining the functional limitations caused by Claimant's mental impairments, the ALJ summarized the evidence of record and concluded that Claimant had mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration.[1] (Tr. at 20.)  The ALJ thus determined that Claimant could not return to her past relevant work. (Tr. at 23.)

At the administrative hearing, the ALJ asked the VE to consider a person of Claimant's age, education, and work experience, and asked:

> what kind of jobs are there, in the economy, for somebody [who] couldn't do any fine, manipulative movements and I would have to have a job where there was no direct contact, with the public, and no quotas, you know, being paid per visit – per hour, that is a lower stress job.

(Tr. at 382.)  The VE responded that there would be "housekeeping, cleaning, motel/hotel aid, that kind of position," with about 250,000 jobs nationally and 8,500 regionally, performed at the light, unskilled exertional level. (Tr. at 382.)  Additionally, the ALJ asked whether a person with depression or anxiety such that they could get up, go to work and do simple, unskilled tasks, but with a lower level of concentration, could perform the housekeeper/cleaner job. (Tr. at 383.) The VE responded in the affirmative. (Tr. at 383.)

In determining Claimant's RFC and considering her limitations in concentration, persistence, and pace, the ALJ limited her to low-stress work with no production quotas. (Tr. at 382.)  As noted, the ALJ found that Claimant had moderate difficulties in maintaining concentration, persistence, and pace. (Tr. at 20.) In making this determination, the ALJ relied upon the medical evidence of two state

---

[1] The ALJ followed the special technique for evaluating mental impairments. See 20 C.F.R. § 404.1520a (2004).

agency physician assessments, as well as an October 2002 evaluation by psychologist Kimberly Caudell. (Tr. at 20-21, 220-25, 193-206, 230-43.)  In April 2002, Disability Determination Service physician Dr. Clark reviewed the record and opined that Claimant had moderate difficulties in maintaining concentration, persistence, or pace. (Tr. at 203.) Dr. Clark noted Claimant's treatment with Dr. Hasan, stating that she complained of "depression anxiety panic– job stressor." (Tr. at 205.) Likewise, in October 2002, DDS physician Dr. Lilly found that Claimant had moderate difficulties in this area. (Tr. at 240.)  Both Dr. Lilly and Dr. Clark found that Claimant retained the ability to perform work-like activities despite difficulties with concentration, persistence, and pace.[2] (Tr. at 190, 228.)  Also in October 2002, Claimant was evaluated by Kimberly Caudell, M.A., supervised psychologist. (Tr. at 220-25.) Based upon testing, Ms. Caudell determined that Claimant's concentration was adequate. (Tr. at 223.)  She noted that Claimant "maintained a consistent level of effort during the testing" and "was overly persistent and refused to give up." (Tr. at 223.)  She worked at a normal pace. (Tr. at 223.)

The ALJ noted that Claimant's treating psychiatrist, Dr. Hasan, completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) on April 28, 2003.  (Tr. at 300-03.) Dr. Hasan opined that Claimant had a "poor" ability (seriously limited but not precluded) in the majority of areas assessed, including the ability to interact with supervisors, deal with the public, deal with work stresses, and maintain attention/concentration. (Tr. at 301-02.)  The only area rated "good" was the ability to understand, remember, and carry out simple job instructions. (Tr. at 301.) Dr. Hasan

---

[2] Claimant argues that the ALJ failed to properly explain the weight given to these two medical source opinions, noting that Dr. Clark found Claimant moderately limited in the ability to complete a normal work day and work week without interruptions from psychologically based symptoms. (Tr. at 189.)  The Court finds that the ALJ relied specifically upon the functional limitation ratings of these two physicians (the "B" criteria of the Listings), and that despite their findings, both opined that Claimant could perform work-like activities. (Tr. at 203, 240.)

opined that Claimant was moderately limited in activities of daily living; slightly limited in maintaining social functioning; had marked difficulties in maintaining concentration, persistence, and pace; and had three episodes of decompensation of extended duration. (Tr. at 303.)  The ALJ noted this assessment but found it entitled to no significant weight because it was inconsistent with the other evidence of record and contained no rationale for the findings. (Tr. at 20-21.)

The ALJ noted that although Claimant had severe impairments, she had gone for long periods of time with little or no treatment. (Tr. at 22.) He noted that on March 25, 2002, Claimant reported to a mental health social worker that she was doing fair, noting that she and her husband had been traveling cross-country in a recreational vehicle since February and continued to do so indefinitely and sell their home. (Tr. at 22, 283.)  Based upon the testimony of the VE at the hearing, the ALJ concluded that Claimant could perform the job of housekeeper/cleaner and was therefore not disabled.

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments.  Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989).  "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities -- presumably, he must study the evidence of record to reach the necessary level of familiarity."  Id. at 51, see also English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993) (stating that "in questioning a vocational expert in a social security disability hearing, the ALJ must propound hypothetical questions to the expert that are based upon a consideration of all relevant evidence of record on the Claimant's impairments."). A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence.  See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); see also Pickney v. Chater, 96 F.3d 294, 296-7 (8th Cir. 1996) (holding

that "a hypothetical question posed to a vocational expert must capture the concrete consequences of claimant's deficiencies"); Osenbrock v. Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (stating that "An ALJ must propose a hypothetical to a vocational expert that is based on medical assumptions supported by substantial evidence in the record that reflects each of the Claimant's limitations."). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe.  Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983). If a Claimant's complaints are not credible, the hypothetical question posed to the vocational expert should contain no reference to them. See Jones v. Bowen, 841 F.2d 849, 851 (4th Cir. 1988.)

The undersigned finds that the ALJ submitted a proper hypothetical question to the VE which sufficiently included all of Claimant's impairments and limitations.  The ALJ accounted for Claimant's moderate limitations in concentration, persistence, and pace by limiting her to the performance of low stress work with no production quotas. (Tr. at 382.) The VE responded by identifying the job of housekeeper/cleaner, which is an unskilled job involving only simple tasks. (Tr. at 382-83.)  The ALJ's RFC determination is supported by the evidence of record, as noted above. A consultative examiner found that Claimant's concentration was adequate and persistence and pace were normal, and DDS physicians found that Claimant had moderate limitations in concentration, persistence, and pace but could still perform work-like activities. (Tr. at 223, 190, 228.)  Additionally, when Claimant's attorney asked the VE to consider the assessment of Dr. Hasan, which included the opinion that Claimant had a seriously limited but not precluded ability to maintain attention and concentration, the VE responded that Claimant could likely still perform the job of housekeeper/cleaner. (Tr. at 384.)

In Smith v. Halter, 307 F.3d 377 (6th Cir. 2001), the Social Security claimant asserted on appeal that the VE's testimony did not provide substantial evidence to support the ALJ's decision

because the ALJ did not accurately characterize the claimant's mental impairment in his hypothetical question to the VE. Smith, 307 F.3d at 379. The ALJ had completed and attached to his decision a Psychiatric Review Technique Form (PRTF) which assessed the claimant's degree of functional limitation due to his mental impairment (depression). Id. at 378. The ALJ found that claimant "Often" suffered deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner. Id. At the administrative hearing, the ALJ described the claimant's work experience and physical restrictions to the VE and characterized his mental impairment "as limiting him to jobs that are routine and low stress, and do not involve intense interpersonal confrontations, high quotas, unprotected heights, or operation of dangerous machinery." Id. The VE identified four jobs which claimant could perform despite his impairments. Id.

The United States Court of Appeals for the Sixth Circuit found that the ALJ did not err by failing to specifically include the instruction that the claimant "often" suffered deficiencies in concentration, persistence or pace. Smith, 307 F.3d at 379. The Court found that the ALJ went "beyond this simple frequency assessment" and translated the condition "into the only concrete restrictions available to him." Id. The ALJ used restrictions recommended by an examining psychiatrist and incorporated these into his hypothetical question. Id. The Court distinguished cases cited by the claimant, stating that the ALJs in those cases made "no attempt to incorporate concentration difficulties in their instructions to the vocational expert." Id.

In the instant case, there was evidence that the Claimant had limitations in concentration, persistence, and pace, but that she could nonetheless perform work-like activities. The ALJ accounted for her limitations by limiting her to low-stress work with no production quotas, and the job identified by the VE was an unskilled job requiring the performance of only simple tasks. See Donahue v. Barnhart, 279 F.3d 441, 444 (7th Cir. 2002) (remand was not required when ALJ failed to include in

the hypothetical question claimant's shortcomings in concentration; Court found that VE did not name

jobs in which steady concentration was essential).  Additionally, the VE testified that this job could

likely be performed even if the Claimant had a seriously limited ability to maintain attention and

concentration.  Based upon the foregoing, the Court finds that the ALJ's decision is supported by

substantial evidence.

Claimant argues briefly in a footnote that the ALJ committed reversible error by failing to

develop the record as to whether Claimant's condition might have worsened in 2003. (Pl.'s Br. at 11,

n. 8.)  Claimant asserts that the ALJ had a duty to recontact Dr. Hasan to determine whether her

condition deteriorated. 20 C.F.R. § 404.1512(e) states as follows:

> (e) Recontacting medical sources. When the evidence we receive from your treating
> physician or psychologist or other medical source is inadequate for us to determine
> whether you are disabled, we will need additional information to reach a
> determination or a decision. To obtain the information, we will take the following
> actions.
> (1) We will first recontact your treating physician or psychologist or other medical
> source to determine whether the additional information we need is readily available.
> We will seek additional evidence or clarification from your medical source when the
> report from your medical source contains a conflict or ambiguity that must be
> resolved, the report does not contain all the necessary information, or does not appear
> to be based on medically acceptable clinical and laboratory diagnostic techniques. We
> may do this by requesting copies of your medical source's records, a new report, or
> a more detailed report from your medical source, including your treating source, or
> by telephoning your medical source.

20 C.F.R. § 404.1512(e) (2004) (emphasis added).  Social Security Ruling 96-5p further states that

a treating source will be recontacted if he has rendered an opinion on an issue reserved to the

Commissioner and the basis for that opinion is unclear. SSR 96-5p, 1996 WL 362206.

Claimant fails to assert how this information is inadequate or ambiguous.  It appears that the

ALJ, in stating that Claimant's condition may have worsened in 2003, was merely giving Claimant

the benefit of doubt.  (Tr. at 21.)  The ALJ states that perhaps the condition worsened, but "the record

as a whole does not support a level of severity of 'marked' [in concentration, persistence, or pace] for 12 consecutive months or more." (Tr. at 21.)  Dr. Hasan's 2003 assessment of Claimant's mental RFC was quite limiting and was inconsistent with the other evidence of record. (Tr. at 301-03, 21.) As the Commissioner notes, it is the Claimant's burden to establish disability. See <u>Blalock v. Richardson</u>, 483 F.2d 773, 774 (4th Cir. 1972).  The 2003 assessment is accompanied by only one medical progress note, which fails to indicate a significant worsening in Claimant's condition.  The ALJ had other medical evidence consisting of treatment notes from Dr. Hasan, as well as evidence from other consultative physicians.  Accordingly, the ALJ did not err or fail to discharge his duty to develop the record on this issue.

   For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings, **GRANT** the Defendant's Motion for Judgment on the Pleadings,  **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the Court's docket.

   The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

   Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  <u>Snyder v.</u>

Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright

v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.

1984).  Copies of such objections shall be served on opposing parties, Chief Judge Faber, and this

Magistrate Judge.

  The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy

of the same to counsel of record.

Date: July 27, 2005.

            R. Clarke VanDervort
            United States Magistrate Judge